**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ____________________

HOWARD SCHWARTZ and
JILL SCHWARTZ, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

MAXAR TECHNOLOGIES INC.,
HOWARD L. LANCE,
BIGGS PORTER, and
MICHAEL B. WIRASEKARA, JR.

Defendants.

---

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

---

Plaintiffs Howard Schwartz and Jill Schwartz ("Plaintiffs"), on behalf of themselves and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Maxar Technologies Inc., Howard L. Lance, Biggs Porter, and Michael B. Wirasekara, Jr. (collectively, "Defendants"), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Maxar Technologies Inc. ("Maxar" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the

Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Maxar securities between February 22, 2018 through January 7, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Maxar is a leading global provider of advanced space technology solutions for commercial and government markets including satellites, Earth imagery, geospatial data and analytics, at the nexus of the new space economy, developing and sustaining its infrastructure and delivering the products, services, systems and solutions.

3. Maxar was founded in 1969 and is based in Westminster, Colorado. Prior to 2017, Maxar was doing business under the name MacDonald, Dettwiler and Associates Ltd. ("MacDonald"), and the Company's common shares traded on the Toronto Stock Exchange ("TSX") under the ticker symbol "MDA." During the second quarter of 2017, the Company successfully registered its common shares with the SEC and Maxar began trading as a dual-listed company on both the TSX and the New York Stock Exchange (the "NYSE") under the symbol "MAXR."

4. On October 5, 2017, MacDonald purchased DigitalGlobe, Inc. ("DigitalGlobe"), an American commercial vendor of space imagery and geospatial content. MacDonald purchased DigitalGlobe for approximately $2.3 billion dollars and then rebranded itself as "Maxar

Technologies Ltd." As part of the purchase, the Company acquired DigitalGlobe's satellites, called the "WorldView Legion", including the WorldView-4 satellite ("WorldView-4").

5. WorldView-4 was acquired by GeoEye Inc. prior to its merger with DigitalGlobe in 2013. WorldView-4 was launched in November 2016 and generated revenues of approximately $85 million in fiscal year 2018. The satellite had a net book value of approximately $155 million, including related assets, as of December 31, 2018.

6. WorldView-4 is equipped with control moment gyros ("CMGs"), which are attitude control devices generally used in spacecraft attitude control systems.[1] A CMG consists of a spinning rotor and one or more motorized gimbals that tilt the rotor's angular momentum. As the rotor tilts, the changing angular momentum causes a gyroscopic torque that rotates the spacecraft.

7. On January 2, 2019, Maxar filed a Current Report on Form 8-K with the SEC (the "January 2 Form 8-K"). The January 2 Form 8-K announced that on January 1, 2019, Maxar Technologies Inc., a Delaware corporation ("Maxar U.S."), became the ultimate parent company of Maxar Technologies Ltd., which existed under the laws of the Province of British Columbia ("Maxar Canada").

8. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Maxar improperly inflated the value of its intangible assets, among other accounting improprieties; (ii) Maxar's highly-valued WorldView-4 was equipped with CMGs that were faulty and/or ill-suited

---

[1] "Attitude control" refers to control over a satellite's orientation.

for their designed and intended purpose; and (iii) as a result, Maxar's public statements were materially false and misleading at all relevant times.

9. On August 7, 2018, Spruce Point Capital Management ("Spruce Point") published a research report regarding Maxar. The Spruce Point report alleged, in part, that Maxar "has pulled one of the most aggressive accounting schemes Spruce Point has ever seen to inflate Non-IFRS earnings by 79%." Specifically, the report asserted that Maxar had used its acquisition of DigitalGlobe "to inflate [its] intangible assets" and had "amended its post-retirement benefit plan to book one-time gains" in a manner that "was not fully disclosed across its investor communications."

10. Following publication of the Spruce Point report, Maxar's stock price fell $5.97 per share, or 13.44%, to close at $38.44 on August 7, 2018.

11. On January 7, 2019, on Current Report Form 8-K filed with the SEC, Maxar disclosed that WorldView-4 experienced a failure in its CMGs, preventing the satellite from collecting imagery due to the loss of an axis of stability. It was further disclosed that WorldView-4 will likely not be recoverable and will no longer produce usable imagery.

12. Following this announcement, the Company's stock price fell $5.69 per share, or 48.5%, over the following two trading sessions, to close at $6.03 per share on January 8, 2019.

13. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act.

16. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Maxar's principal executive offices are located within this Judicial District.

17. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

18. Plaintiffs Howard Schwartz and Jill Schwartz as set forth in the attached Certification, acquired Maxar securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

19. Defendant Maxar Technologies Inc. is a Delaware corporation with principal executive offices located at 1300 W. 120th Avenue, Westminster, Colorado 80234. Maxar's common shares are dual-listed on the TSX and the NYSE under the symbol "MAXR."

20. Defendant Howard L. Lance ("Lance") served at all relevant times as the Company's President and Chief Executive Officer ("CEO"). Lance is also Chairman of the Company.

21. Defendant Biggs Porter ("Porter") has served as an Executive Vice President and the Chief Financial Officer ("CFO") of the Company since August 15, 2018.

22. Defendant Anil Wirasekara, Jr. ("Wirasekara") served as the Company's Interim CFO between February 2018 and August 15, 2018, and currently serves as an Executive Vice President of the Company.

23. The Defendants referenced above in ¶¶ 20-22 are sometimes referred to herein as the "Individual Defendants."

24. The Individual Defendants possessed the power and authority to control the contents of Maxar' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

25. Maxar is a leading global provider of advanced space technology solutions for commercial and government markets including satellites, Earth imagery, geospatial data and analytics, is at the nexus of the new space economy, developing and sustaining its infrastructure and delivering the products, services, systems and solutions that make it possible.

26. Maxar was founded in 1969 and is based in Westminster, Colorado. Prior to 2017, Maxar was doing business under the name MacDonald, and the Company's common shares traded on the TSX under the ticker symbol "MDA." During the second quarter of 2017, the Company successfully registered its common shares with the SEC and Maxar began trading as a dual-listed company on both the TSX and the NYSE under the symbol "MAXR.

27. On October 5, 2017, MacDonald purchased DigitalGlobe, an American commercial vendor of space imagery and geospatial content. MacDonald purchased DigitalGlobe for approximately $2.3 billion dollars and then rebranded itself as "Maxar Technologies Ltd." As part of the purchase, the Company acquired DigitalGlobe's satellites, including WorldView-4.

28. WorldView-4 was acquired by GeoEye Inc. prior to its merger with DigitalGlobe in 2013. WorldView-4 was launched in November 2016 and generated revenues of approximately $85 million in fiscal year 2018. The satellite had a net book value of approximately $155 million, including related assets, as of December 31, 2018.

29. WorldView-4 is equipped with CMGs, which are attitude control devices generally used in spacecraft attitude control systems. A CMG consists of a spinning rotor and one or more motorized gimbals that tilt the rotor's angular momentum. As the rotor tilts, the changing angular momentum causes a gyroscopic torque that rotates the spacecraft.

30. On January 2, 2019, Maxar filed the Company's January 2 Form 8-K. The January 2 Form 8-K announced that on January 1, 2019, Maxar U.S. became the ultimate parent company of Maxar Canada.

**Materially False and Misleading Statements Issued During the Class Period**

31. The Class Period begins on February 22, 2018, when Maxar filed a Form 6-K with the SEC, reporting the Company's financial results for the fourth quarter of 2017 and year ending December 31, 2017 (the "4Q 6-K"). Appended as Exhibit 99.2 of the 4Q 6-K was the

Management's Discussion and Analysis (the "MD&A"), dated February 22, 2018. The MD&A contained information concerning how Maxar calculated the fair value of its intangible assets, stating, in relevant part:

> In a business combination, all assets, liabilities and contingent liabilities acquired or assumed are recorded at their fair values at the date of acquisition. ***Management uses judgment when estimating fair values of the net assets acquired and any contingent consideration to be recognized as part of the initial purchase consideration. The fair value of intangible assets acquired is determined using valuation techniques that require estimation of replacement costs, future net cash flows and discount rates***. Changes in the estimates and assumptions used could have a material impact on the amount of goodwill recorded and the amount of depreciation and amortization expense recognized in earnings for depreciable assets in future periods.

(Emphasis added.)

32. The MD&A further provided the following with respect to Maxar's accounting of its intangible assets:

> Intangible assets with finite useful lives are amortized over their estimated useful lives. The Company reviews the amortization methods and estimated useful lives of intangible assets annually. As at December 31, 2017, the Company did not have any indefinite life intangible assets. The Company tests intangible assets for impairment when events or changes in circumstances indicate that an asset might be impaired. The impairment test compares the carrying amount of the intangible asset with its fair value, and an impairment loss would be recognized in earnings for the excess of carrying value over fair value, if any.
>
> Maxar has used independent third party valuation specialists for significant acquisitions to perform purchase price allocations and to identify and attribute values and estimated useful lives to the intangible assets acquired. Details provided in valuators' reports on cash flows, tax rates, discount rates, capital expenditures, attrition rates and other assumptions used to determine the nature and amount of the individual intangible assets are reviewed by management. This process calls for considerable use of judgment, and requires all parties involved to make estimates and assumptions. These determinations impact the amount of amortization expense to be recognized in future periods over the estimated useful lives of the intangible assets.
>
> Impairment tests of goodwill and intangible assets involve considerable use of judgment and require management to make estimates and assumptions. The fair values of cash generating units are derived from certain valuation models, which consider various factors such as discount rates, future earnings and perpetual

> growth rates. Changes in estimates and assumptions can affect the reported value of goodwill and intangible assets.

33. The MD&A also stated that Maxar acquired "intangible assets, consisting of customer relationships, backlog, technology, software, and other intellectual property" in its 2017 acquisition of DigitalGlobe. More specifically, the MD&A stated that the Company incurred $1.439 billion in intangible assets related to the acquisition of DigitalGlobal, and an additional $1.668 billion in goodwill.

34. The MD&A touted the acquisition of DigitalGlobe's collection of satellites, which included WorldView-4, stating, in relevant part:

> Prior to closing the DigitalGlobe Transaction, the Company signed a contract with DigitalGlobe, valued at several hundred million dollars, to provide a next-generation satellite constellation for high-resolution Earth imaging. ***The constellation of low Earth orbit satellites, called WorldView Legion, will more than double DigitalGlobe's high-resolution capacity in important regions***. On October 5, 2017, the value of this contract was removed from backlog as it became an intercompany contract upon closing the DigitalGlobe Transaction. Post October 5, 2017, the costs incurred to build the satellite have been capitalized on the Company's balance sheet as property, plant and equipment.

(Emphasis added.)

35. The MD&A specifically discussed timing and construction expenses associated with the WorldView-4 satellite, stating:

> Pro forma consolidated revenues were $2,307.9 million in 2017 compared to $2,407.7 million in 2016. Pro forma adjusted EBITDA was $739.3 million compared to $738.3 million in 2016. Pro forma adjusted earnings was $277.0 million in 2017 ($4.87 per share) compared to $336.6 million ($5.92 per share) in 2016. ***The decrease in adjusted earnings and adjusted earnings per share was due to several factors primarily related to the WorldView-4 satellite. There was an increase in finance expense year-over-year due to a decrease in the amount of finance expense capitalized of approximately $45 million related to the timing of the WorldView-4 satellite construction, launch and commissioning. There was also an increase in depreciation expense in 2017 compared to 2016 due to WorldView-4 being placed into service in the first quarter of 2017***. Lastly, the pro forma effective income tax rate in 2017 was higher than in 2016 due to the mix of income between jurisdictions.

(Emphasis added.)

36. Then, on March 29, 2018, Maxar filed an annual report on Form 40-F with the SEC, announcing the Company's financial and operating results for the year ended December 31, 2017 (the "Annual Report"). The MD&A was appended as Exhibit 99.2 of the Annual Report.

37. Appended as Exhibit 99.1 of the Annual Report was Maxar's Annual Information Form for the year ended December 31, 2017 (the "AIF"), dated March 29, 2018. The AIF discussed how Maxar's WorldView Legion series of satellites were being constructed alongside the Company's low cost satellites:

> The Company also offers low cost Earth observation satellite constellations for commercial and government applications. These low cost Earth observation satellites are being constructed at the Company's specialized facility in Palo Alto, California dedicated to small satellite manufacturing. DigitalGlobe's next-generation satellite constellation for high-resolution Earth imaging, called WorldView Legion, is also being manufactured at the Palo Alto, California facility.

38. Appended alongside the MD&A as Exhibits 99.6 and 99.7 of the Annual Report were signed Section 906 Certifications by Defendants Lance and Wirasekara, respectively, pursuant to the Sarbanes-Oxley Act of 2002, which "certifie[d] that: 1) the Annual Report on Form 40-F for the year ended December 31, 2017 which this statement accompanies fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and 2) the information contained in the Annual Report on Form 40-F for the year ended December 31, 2017 fairly presents, in all material respects, the financial condition and results of operations of the Company."

39. The statements referenced in ¶¶31-38 of this Complaint were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i)

Maxar improperly inflated the value of its intangible assets, among other accounting improprieties; (ii) Maxar's highly-valued WorldView-4 was equipped with CMGs that were faulty and/or ill-suited for their designed and intended purpose; and (iii) as a result, Maxar's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

40. On August 7, 2018, Spruce Point published a research report on Maxar. The Spruce Point report alleged, in part, that Maxar "has pulled one of the most aggressive accounting schemes Spruce Point has ever seen to inflate Non-IFRS earnings by 79%." Specifically, the report asserted that Maxar had used its acquisition of DigitalGlobe "to inflate [its] intangible assets" and had "amended its post-retirement benefit plan to book one-time gains" in a manner that "was not fully disclosed across its investor communications." Spruce Point further alleged that the Company engaged in an M&A accounting scheme to cover past problems, stating:

> In Feb 2017, management said it didn't identify any material inconsistencies in DigitalGlobe's financials between GAAP and IFRS. It then backtracked and revised financials that artificially inflated revenues by 4-6% and EBITDA by double digits. However, this is only the tip of the iceberg. We previously illustrated our concern that MDA appeared to be overcapitalizing costs by inflating intangible asset purchases. Thus, it came as no surprise to us when Maxar used the DigitalGlobe acquisition to inflate intangible assets even further. However, the $1.1 billion inflation was an order of magnitude that shocked us. MDA made reference to DigitalGlobe's "world leading (satellite) constellation" as a strategic rationale of the acquisition – yet it impaired the satellite assets at deal closing, and inflated its intangible asset accounts by a commensurate $1.1 billion.

41. Specifically, the report noted that while "DigitalGlobe carried just $74m of intangible assets," Maxar believed that C$1.3 billion (US$1.1 billion) of deal value existed at the expense of its physical satellite constellation. The footnote to these figures, as the report highlights,

provided no valid explanation other than "[t]o reflect the estimated fair value of DigitalGlobe's assets and liabilities."

42. The report also stated that "[b]y impairing a depreciable asset and inflating intangibles, Maxar claims its Non-IFRS measures should exclude acquired intangibles," but that Maxar's 2018 Adjusted EPS expectation of $4.75 per shareholder is "pure fiction" in light of the Company's numerous aggressive accounting choices. For example, Spruce Point alleged that Maxar is "extending depreciable asset lives twice in Q1 and Q2'18 for the same satellites it visibly impaired." Thus, the Spruce Point report estimated that Maxar's EBITDA and EPS are overstated by as much as 17% and 79%, respectively.

43. The Spruce Point report also noted that "Maxar has accelerated recognition of investment tax credits, and amended its post-retirement benefit plan to book one-time gains." According to the report, because of the benefit plan gain, "Maxar booked a $24.6m gain in Q4'17 (flattering EBITDA by 13.5%), which was not fully disclosed across its investor communications, nor do we believe analysts have adjusted their models to account for it." As a result, the Spruce Point predicted that "Maxar will have a large headwind in Q4'18," disappointing investors.

44. In addition, the Spruce Point report detailed how Maxar resorted to accounting changes to artificially boost its EPS guidance. For example, the report noted that in the first quarter of 2018, Maxar increased its estimated useful life of satellites, which lowered depreciation expense by $14-22 million and increased EPS by $0.15. The report also noted that in the second quarter of 2018, Maxar cut depreciation guidance by an additional $10 million ($0.15) while failing to increase guidance, signaling underlying weakness.

45. On this news, the price of Maxar common stock fell $5.97 per share, or 13.44%, to close at $38.44 on August 7, 2018.

46. Then, on January 7, 2019, Maxar disclosed that WorldView-4 experienced a failure in its CMGs, preventing the satellite from collecting imagery due to the loss of an axis of stability. It was further disclosed that the WorldView-4 satellite will likely not be recoverable and will no longer produce usable imagery.

47. Following this announcement, the Company's stock price fell $5.69 per share, or 48.5%, over the subsequent two trading days, to close at $6.03 per share on January 8, 2019.

48. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

49. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Maxar securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Maxar securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Maxar or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

53. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Maxar;
- whether the Individual Defendants caused Maxar to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Maxar securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

55. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Maxar securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiffs and members of the Class purchased, acquired and/or sold Maxar securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56. Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

58. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

59. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Maxar securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Maxar securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Maxar securities. Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Maxar's finances and business prospects.

62. By virtue of their positions at Maxar, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Maxar, the Individual Defendants had knowledge of the details of Maxar's internal affairs.

64. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Maxar. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Maxar's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Maxar securities was artificially inflated throughout the Class Period. In ignorance of the adverse

facts concerning Maxar's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Maxar securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

65. During the Class Period, Maxar securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Maxar securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Maxar securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of Maxar securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

66. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

68. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69. During the Class Period, the Individual Defendants participated in the operation and management of Maxar, and conducted and participated, directly and indirectly, in the conduct of Maxar's business affairs. Because of their senior positions, they knew the adverse non-public information about Maxar's misstatement of income and expenses and false financial statements.

70. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Maxar's financial condition and results of operations, and to correct promptly any public statements issued by Maxar which had become materially false or misleading.

71. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Maxar disseminated in the marketplace during the Class Period concerning Maxar's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Maxar to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Maxar within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Maxar securities.

72. Each of the Individual Defendants, therefore, acted as a controlling person of Maxar. By reason of their senior management positions and/or being directors of Maxar, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause,

Maxar to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Maxar and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

73. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Maxar.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B. Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury.

Dated: March 14, 2019

**BERENS LAW LLC**

/s/ *Jeffrey A. Berens*
Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, CO 80238
Telephone: (303) 861-1764
Facsimile: (303) 395-0393
jeff@jberenslaw.com

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
Thomas L. Laughlin, IV
Rhiana L. Swartz
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com

**CRIDEN & LOVE, P.A.**
Michael E. Criden
Lindsey C. Grossman
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9000
Facsimile: (305) 357-9050
mcriden@cridenlove.com
lgrossman@cridenlove.com

*Attorneys for Plaintiffs*

**CERTIFICATION OF NAMED PLAINTIFFS**
**PURSUANT TO FEDERAL SECURITIES LAWS**

HOWARD AND JILL SCHWARTZ ("Plaintiffs") declare:

1. Plaintiffs have reviewed a complaint and authorized its filing.

2. Plaintiffs did not acquire the security that is the subject of this action at the direction of plaintiffs' counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiffs are willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiffs have made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

*See* attached Schedule A.

5. Plaintiffs have not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

6. Plaintiffs will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiffs' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12 day of March, 2019.

By: ______________________
**Howard Schwartz**

By: ______________________
**Jill Schwartz**

## SCHEDULE A

## SECURITIES TRANSACTIONS - MAXR ACQUISITIONS

| Date Acquired | Amount of Securities Acquired | Price |
|---|---|---|
| 3/21/18 | 1,800 | $44.72 |
| 11/14/18 | 3,500 | $17.57 |